UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

VERONIKA CHAUCA,

                                        Plaintiff,

            -against-                                            18-CV-2516 (BC)

ADVANTAGECARE PHYSICIANS, P.C.,
EMBLEMHEALTH, INC., EMBLEMHEALTH
SERVICES COMPANY, LLC, and EMBLEMHEALTH
ADMINISTRATORS, INC., and TARA HARRINGTON,
Individually,

                                        Defendant.

-----------------------------------------------------------------------X


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT


**COZEN O'CONNOR**
*Attorneys for Defendants*
277 Park Avenue
New York, New York 10172
(212) 453-3937

LEGAL\40684194\1

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ...................................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL HISTORY .................................................1

LEGAL STANDARD.............................................................................................................2

    *Summary Judgment – Generally* ..........................................................................................2

    *Summary Judgment – Employment Cases* ...........................................................................3

ARGUMENT ..........................................................................................................................4

POINT I

    SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S
    RETALIATION CLAIMS BECAUSE THERE IS NO EVIDENCE IN THE
    RECORD THAT PLAINTIFF'S EMPLOYMENT ENDED ON AUGUST 7, 2017
    BECAUSE OF A RETALIATORY PURPOSE....................................................................5

    A. Retaliation – FMLA.......................................................................................................5

        1. The Law ..................................................................................................................5

        2. The Lack of Genuine Issue of Material Fact in the Record on
           Plaintiff's Ultimate Burden....................................................................................5

    B. Retaliation – Title VII, NYSHRL, NYCHRL ...............................................................13

        1. The Law ..................................................................................................................13

        2. The Lack of Genuine Issue of Material Fact in the Record on
           Plaintiff's Ultimate Burden....................................................................................14

POINT II

    SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S "GENDER
    HARASSMENT, HOSTILE ENVIRONMENT" CLAIMS BECAUSE THE
    ALLEGED CONDUCT, EVEN IF TRUE, DOES NOT RISE TO THE LEVEL
    OF A VIABLE CAUSE OF ACTION ..................................................................................19

A. The Law ....................................................................................................................19

B. The Lack of genuine Issue of Material Fact to Dispute That the Alleged
Conduct – Even Accepted as true -- Does Not Rise to the Level of a
"Gender Harassment, Hostile Environment" as a Matter of Law ...................................20

CONCLUSION ..............................................................................................................................25

LEGAL\40782415\1

# TABLE OF AUTHORITIES

*Abdu-Brisson v. Delta air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ......................................3

*Abrams v. Department of Public Safety*, 764 F.3d 244 (2d Cir. 2014)..................................12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................2

*Bennett v. Watson Wyatt & Co.*, 136 F.Supp2d 236 (S.D.N.Y. 2001) ..................................2

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435 (2d Cir. 1999) ....................................................3

*Burlington Coat Factory Warehouse Corp. v. Espirit De Corp.*, 769 F.2d 919
(2d Cir. 1985).........................................................................................................................2

*Butler v. Coca-Cola Refreshments USA, Inc.*, 2013 WL 3324995
(E.D.N.Y. Jul. 1, 2013) (Cogan, J.) ...................................................................................17

*Byrne v. Telesector Resources Group., Inc.*, 2009 WL 2019951 (2d Cir. Jul. 14, 2009)......22

*Carter v. State of New York*, 2005 WL 2460116 (2d Cir. Oct. 5, 2005)................................22

*Christopher-Ketchum v. Agway Energy Prod.*, 988 F.Supp. 610 (N.D.N.Y. 1997)..............25

*Cobb v. Morningside at Home, Inc.*, 2009 WL 874612 (S.D.N.Y. Mar. 31, 2009) ..............23

*DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 2016 WL 3840673
(E.D.N.Y. Jul. 8, 2016) .......................................................................................................12

*El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931 (2d Cir. 2010)............................................12

*Ezuma v. City Univ. of NY*, 665 F.Supp.2d 116 (E.D.N.Y. 2009) (Cogan, J.)....................10, 14

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F3d 14 (2d Cir. 1995) ....................2

*Green v. Rochdale Village Social Serv., Inc.*, 2016 WL 4148322
(E.D.N.Y. Aug. 4, 2016) (Cogan, J.) ..............................................................................13-14

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)................................................................20

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001)......................................................3

*Husser v. New York City Dep't of Ed.*, 137 F.Supp.3d 253 (E.D.N.Y. 2015) ......................23

*Isakov v. HASC Center, Inc.*, 2018 WL 1114714 (E.D.N.Y. Feb. 27, 2018) (Cogan, J.).......14, 16

iii

*Jordan v. Olsten Corp.,* 111 F.Supp.2d 227 (W.D.N.Y. 2000) ...............................................18

*Joseph v. Owens & Minor Distribution, Inc.,* 5 F.Supp.3d 295 (E.D.N.Y. 2014)................10

*Leizerovici v. HASC Ctr., Inc.,* 2018 WL 1115348 (E.D.N.Y. Feb. 27, 2018 (Cogan, J.) ....5, 20

*Mathew v. North Shore-Long Island Jewish Health Sys., Inc.,* 582 Fed. Appx 70
(2d Cir. 2014)........................................................................................................................10

*McLee v. Chrysler Corp.,* 109 F.3d 130 (2d Cir. 1997)........................................................3, 10

*McPherson v. N.Y.C. Dep't of Educ.,* 457 F.3d 211 (2d Cir. 2006) .....................................10

*Meiri v. Dacon,* 759 F.2d 989 (2d Cir. 1985) .......................................................................4

*Meloff v. New York Life Ins. Co.,* 51 F.3d 372 (2d Cir. 1995)..............................................3

*Moore v. Kingsbrook Jewish Med. Ctr.,* 2013 WL 3968748 (E.D.N.Y. Jul. 30, 2013) ........11

*Noyer v. Viacom, Inc.,* 22 F.Supp2d 301 (S.D.N.Y. 1998).....................................................1

*Porter v. Potter,* 2010 WL 9047894 (E.D.N.Y. Jan. 21, 2010) (Cogan, J.) .........................5

*Quinn v. Green Tree Credit Corp.,* 159 F.3d 759 (2d Cir. 1998)..........................................22

*Rinaldi v. Quality King Distributers, Inc.,* 29 F.Supp.3d 218 (E.D.N.Y. 2014)..................,13

*Rizzo-Puccio v. College Auxiliary Serv., Inc.,* 216 F.3d 1073 (2d Cir. 2000) .....................22-23

*Robinson v. Zurich N. Am. Ins. Co.,* 892 F.Supp.2d 409 (E.D.N.Y. 2012) ..........................11

*Roco Carriers, Ltd. V. M/V Nurnberg Express,* 899 F.2d 1292 (2d Cir. 1990)....................2

*Rodriguez v. New York City Health and Hosp. Corp.,* 2015 WL 5229850
(E.D.N.Y. Sept. 8, 2015) (Cogan, J.).................................................................................3, 4, 8

*Russo v. New York Presb. Hosp.,* 972 F.Supp.2d 429 (E.D.N.Y. 2013)...............................24

*SEC v. Grossman,* 887 F. Supp. 649 (S.D.N.Y. 1995) ..........................................................3

*St. Pierre v. Dyer,* 208 F.3d 394 (2d Cir. 2000) ...................................................................3

*Timbie v. Eli Lilly & Co.,* 2011 WL 2600541 (2d Cir. July 1, 2011)....................................2-3, 18

*Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72 (2d Cir. 2015)................................16

LEGAL\40782416\1

*Vito v. Bausch & Lomb Inc.*, 403 Fed. Appx. 593 (2d Cir. 2010) ..........................................23

LEGAL\40782416\1

## INTRODUCTION

> While one cannot read plaintiff's submissions without recognizing that she feels ill-used, it is an ill use of [ ] discrimination laws to treat them as sharpening stones on which to grind personal axes.

*Noyer v. Viacom, Inc.*, 22 F. Supp.2d 301, 308 (S.D.N.Y. 1998).

That is precisely this case. At its core, this case is about a former employee who does not like that she was terminated and disagrees that she did anything wrong. But it is beyond cavil that neither federal nor New York law recognizes a viable legal claim for those subjective feelings. Instead, and as applicable to this motion, there must be *evidence in the record* (*i.e.*, beyond Plaintiff's own speculation or supposition) to permit a rational juror to find that her employer was in fact motivated by an unlawful purpose. Plaintiff has transformed her daily workplace gripes into a federal lawsuit that alleges discrimination and retaliation that, now that discovery has been completed, reveals itself to be long on conclusory beliefs and woefully short on evidentiary support. Accordingly, Defendants AdvantageCare Physicians, P.C. (**"ACPNY"**), EmblemHealth Services Company, LLC, EmblemHealth Administrators, Inc., and Tara Harrington (**"Harrington"**) (collectively, **"Defendants"**) respectfully submit this memorandum of law in support of their instant motion for summary judgment and dismissal of the Complaint in its entirety.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

The relevant, material factual history that is not in dispute for purposes of this motion is set forth in the accompanying Rule 56.1 Statement of Material Undisputed Facts (**"56.1 St."**), and the relevant procedural history is set forth in the accompany Declaration of Michael C. Schmidt (**"Schmidt Declaration"**). For brevity purposes, that history is not repeated here and the Court is respectfully referred to the Rule 56.1 Statement and Schmidt Declaration.

## LEGAL STANDARD

*Summary Judgment – Generally*

Rule 56(c) of the Federal Rules of Civil Procedure provides that the Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In response to a motion for summary judgment, the nonmoving party must set forth specific evidentiary facts establishing the existence of a genuine issue of fact for trial. *Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292 (2d Cir. 1990).

Critically, however, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). *See also Burlington Coat Factory Warehouse Corp. v. Espirit De Corp.,* 769 F.2d 919, 923 (2d Cir. 1985) ("disputes over irrelevant facts must not be allowed to obscure the lack of a material dispute"). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law[,]' [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bennett v. Watson Wyatt & Co.,* 136 F. Supp.2d 236 (S.D.N.Y. 2001) (quotations omitted).

Moreover, a motion for summary judgment may not be defeated based solely upon "conclusory statements or on contentions that the affidavits supporting the motion are not credible, or 'upon the mere allegations or denials of the adverse party's pleading.'" *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995). *See also Timbie v. Eli Lilly*

& Co., 2011 WL 2600541 (2d Cir. July 1, 2011) (plaintiff cannot rely on conclusory allegations to oppose summary judgment); *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (same); *SEC v. Grossman*, 887 F. Supp. 649, 656 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 109 (2d Cir. 1996) ("nonmovant must 'do more than simply show that there is some metaphysical doubt as to the material facts.'"). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000). *See also Rodriguez v. New York City Health and Hosp. Corp.*, 2015 WL 5229850, *3 (E.D.N.Y. Sept. 8, 2015) (Cogan, J.) ("A party may not defeat a motion for summary judgment by relying on unsupported assertions, conjecture, or surmise.").

### *Summary Judgment – Employment Cases*

In the employment context, it has long been settled by the Second Circuit that "[w]hen an employer provides convincing evidence to explain its conduct and the plaintiff rests upon purely conclusory allegations of discrimination, the court may conclude that no material issue of fact exists and it may grant judgment to the employer." *Meloff v. New York Life Ins. Co.*, 51 F.3d 372 (2d Cir. 1995). In fact, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.), *cert. denied*, 534 U.S. 993 (2001). *See also McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997) ("[S]ummary judgment remains available for the dismissal of discrimination claims in cases lacking in genuine issues of material fact."); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (same).

While courts have reviewed the record carefully in granting summary judgment where motive and intent may be at issue, the "salutary purposes of summary judgment – avoiding

protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829 (1985).

As this Court has ruled, claims of discrimination are generally evaluated under the *McDonnell Douglas* burden-shifting framework. *Rodriguez*, 2015 WL 5229850 at *3. Thus, assuming Plaintiff can make a *prima facie* showing, ACPNY (as Plaintiff's employer) must offer a legitimate, non-discriminatory reason for its action, before the burden ultimately "shifts back to the plaintiff to demonstrate that the defendant's offered nondiscriminatory reason was mere pretext *and* that the defendant was actually motivated by discriminatory animus." *Id.* (emphasis added).

## ARGUMENT

As a result of Plaintiff's prior communications with this Court withdrawing certain claims originally set forth in the Complaint, the following claims are still being pursued by Plaintiff: (1) retaliation claims under the federal Family and Medical Leave Act (**"FMLA"**), the New York State Human Rights Law (**"NYSHRL"**), and the New York City Human Rights Law (**"NYCHRL"**); and (2) "gender harassment, hostile work environment" claims under Title VI, the NYSHRL, and the NYCHRL. There is no genuine issue of material fact to withstand summary judgment at this stage on those remaining claims, and summary judgment should be granted.

## POINT I

### SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S RETALIATION CLAIMS BECAUSE THERE IS NO EVIDENCE IN THE RECORD THAT PLAINTIFF'S EMPLOYMENT ENDED ON AUGUST 7, 2017 BECAUSE OF A RETALIATORY PURPOSE

**A.    Retaliation – FMLA**

**1.    The Law**

To establish a claim for FMLA retaliation, Plaintiff must show: (1) she exercised protected rights under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Porter v. Potter,* 2010 WL 9047894, *3 (E.D.N.Y. Jan. 21, 2010 (Cogan, J.), *aff'd,* 484 Fed. Appx. 589 (2d Cir. 2012); *Leizerovici v. HASC Ctr., Inc.,* 2018 WL 1115348 (E.D.N.Y. Feb. 27, 2018) (Cogan, J.). However, even assuming that Plaintiff can make a sufficient *prima facie* showing in opposition to this motion on element (4), there is ultimately no genuine issue of material fact from which a rational juror could conclude that Plaintiff's termination was caused by a retaliatory motive toward Plaintiff for taking a mere 4 sporadic days of FMLA leave after she requested (and was approved for) FMLA leave.

**2.    The Lack of Genuine Issue of Material Fact in the Record on Plaintiff's Ultimate Burden**

Plaintiff's sole remaining FMLA claim centers around her FMLA application in May 2017. It is undisputed that Plaintiff applied for FMLA leave in May 2017 for the sole purpose of taking care of her son when needed for his skin condition and asthma, that she was approved for FMLA leave in June 2017 (for 2-3x/week if needed up to one year), and that she took only four FMLA leave days after her application was approved: June 12, 2017, June 23, 2017, July 7,

2017, and August 4, 2017 (one additional day previously taken was approved retroactively by ACPNY's third-party leave administrator). Ex. C at 70-74, 77, 79; Ex. D.[1] (56.1 St. at ¶¶ 23-24.) The foundation of Plaintiff's claim here – that she must have been terminated because ACPNY had some problem with her taking those four days off after her FMLA application was approved – is supported only by Plaintiff's own self-serving conjecture.

Plaintiff's employment was terminated due to a legitimate, non-retaliatory basis (*i.e.*, time and attendance issues) that followed a history that pre-dated her May 2017 FMLA application in the first instance. Specifically, on March 30, 2017, Plaintiff was issued a 90-day performance improvement plan (**"PIP"**) due to time and attendance policy violations for taking unscheduled absences on seven separate occasions. Ex. C at 97-98; Ex. E. (56.1 St. at ¶¶ 18-19.) Critically, Plaintiff admitted that none of the unscheduled absences in the PIP were dates that had been approved for FMLA purposes. Ex. C at 103. (56.1 St. at ¶ 20.)

Plaintiff's employment was ultimately terminated on August 7, 2017 when Plaintiff again exhibited time and attendance issues, this time as soon as the company learned that Plaintiff failed to work her scheduled late Thursday patient shift, and effectively was stealing time in the Company's opinion by punching in several hours before the physical therapy department was even open for patient physical therapy treatment. Plaintiff's schedule as a Physical Therapy Aide corresponded to the hours that patients were in the office for physical therapy. Ex. F at 44-46, 49-50, 62; Declaration of Tara Harrington (**"Harrington Dec."**) at ¶¶ 5-6; Declaration of Susanne Marcotte (**"Marcotte Dec."**) at ¶¶ 3-5. (56.1 St. at ¶¶ 16-17.) That is, 8:00 a.m. to 5:00 p.m., except on the one "late night" shift on Mondays at Clove Road and Thursdays at Annandale from 11:00 a.m. to 8:00 p.m. *Id.* While Plaintiff was required to punch in and out at

---

[1]    References to "Ex. ___" are to the exhibits submitted with the accompanying Declaration of Michael C. Schmidt in support of Defendants' instant summary judgment motion.

the start and end of her shifts, her supervisors (Harrington at Clove Road and Susanne Marcotte ("**Marcotte**") at Annadale) did not typically look at employee daily punch reports or time records unless an issue or concern was brought to their attention. Harrington Dec. at ¶ 10; Marcotte Dec. at ¶ 8. (56.1 St. at ¶ 42.)

Plaintiff cannot point to any evidence in the record to connect the circumstances leading up to Plaintiff's termination with anyone at ACPNY having any problem with the mere four prior days she took off for approved FMLA leave. On Friday, August 4, 2017, Brinda Swaminaraya ("**Swaminaraya**"), the former Physical Therapist in Annadale and not an individual whom Plaintiff alleges had any retaliatory or discriminatory animus at all, approached Marcotte for the first time to raise a concern that Plaintiff had not been working her required Thursday late night schedule on four separate occasions (most recently the day before on Thursday, August 3rd), and instead was coming into work still at 8:00 a.m. (three hours before patients were scheduled) and leaving work still at 5:00 p.m. (three hours before patient appointments were done). Marcotte Dec. at ¶ 9; Ex. F at 48, 51-55; Harrington Dec. at ¶ 10; Ex. H; Ex. G at 18-26, 29. (56.1 St. at ¶¶ 38-40.) Swaminaraya, who was no longer employed by ACPNY at the time of her deposition, testified that she decided to raise the concern for the first time then because Plaintiff effectively creating her own hours on the late patient Thursdays started to affect Swaminaraya's Physical Therapy practice because no one else was there to assist her when the patients were there. Ex. G at 18-26, 29. (56.1 St. at ¶ 39.)

After Swaminaraya raised her concern with Marcotte, both called Harrington together (at Clove Road) to advise her of Swaminaraya's concern. Marcotte Dec. at ¶ 11; Ex. F at 51-53; Harrington Dec. at ¶ 10; Ex. H; Ex. G at 18-26, 29. (56.1 St. at ¶ 40.) The record reflects that that call is what prompted Harrington to conduct an investigation into the issue (with the involvement

of Human Resources), and a determination was made that Plaintiff was willfully violating time and attendance requirements. *Id. See also* Ex. F at 69-70, 73-74, 78; Harrington Dec. at ¶¶ 12-13; Marcotte Dec at ¶¶ 10-11. (56.1 St. at ¶ 43.) Harrington submitted a memo to Human Resources, which contemporaneously described the chronology. Ex. H. (56.1 St. at ¶ 44.) Notably, Harrington was *not* the one who initially recommended termination; Human Resources decided to terminate Plaintiff's employment effective August 7, 2017. Ex. F at 73-74, 78; Harrington Dec. at ¶ 13; Marcotte Dec. at ¶ 11. (56.1 St. at ¶¶ 45-47.)

Even assuming *arguendo* that Plaintiff can make a threshold *prima facie* showing for her FMLA retaliation claim, she cannot meet her ultimate burden of creating a genuine issue of material fact that ACPNY's articulated business reason for the termination was false *and* that the real reason was a retaliatory one due to her having previously taken a mere handful of FMLA days. *Rodriguez*, 2015 WL 5229850 at *3. Indeed, Plaintiff's unsupported conclusory allegation has three primary flaws.

*First,* Plaintiff admitted the following determinative facts:

> ➢ That she was approved to take FMLA every time she requested approval on those four prior days. Ex. C at 73-74, 81-82. (56.1 St. at ¶ 27.)
> ➢ That no one (including Harrington) ever gave her a hard time or problem when she applied for FMLA benefits or asked to utilize the FMLA days. *Id.* at 80-81, 101. (56.1 St. at ¶ 26.)
> ➢ That she was never written up, never disciplined, never demoted, and never received any adverse action after applying for FMLA benefits in May 2017. *Id.* at 55-56, 84-85. (56.1 St. at ¶ 28.)
> ➢ That she had no knowledge or basis to dispute that Harrington did not even make the termination decision in the first place. *Id.* at 15-16. (56.1 St. at ¶ 37.)

To be clear, there is no ambiguity in Plaintiff's deposition testimony concerning the lack of any retaliatory acts whenever she wanted to use a few days for FMLA purposes:

> Q:    Did Ms. Harrington ever give you a problem when you were texting her that you needed to take an FMLA day?

A:      No.

Q:      Did anybody?

A:      No.

Q:      Okay. Were you ever denied any of the FMLA days
        in 2017 that you requested?

A:      No.

Q:      You were never denied?

A:      No.

Q:      They were always approved?

A:      Yes.

Q:      And no one ever gave you a problem with them?

A:      No.

Q:      Was there ever a day that you needed to take an
        FMLA day in 2017 that you didn't request to take
        an FMLA day?

A:      No, I always requested it.

Q:      And it was always approved?

A:      Yes.

Q:      And no one ever gave you a problem with it?

A:      No.

Exhibit C at 80-82. (56.1 St. at ¶¶ 26-28.)

So where is any evidence *in the record* to show that *anyone* had a problem with Plaintiff having taken four FMLA days (not even consecutively) after her FMLA application was approved? There is none. If anything, the undisputed record demonstrates a *lack* of retaliatory

9

animus based on the few prior FMLA absences. *See Ezuma v. City Univ. of NY*, 665 F.Supp.2d 116, 121 (E.D.N.Y. 2009) (Cogan, J.), *aff'd*, 367 Fed. Appx. 178 (2d Cir. 2010) ("the summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.").

*Second*, even if Plaintiff were able to raise a factual dispute over whether ACPNY was incorrect about Plaintiff's understanding of the late Thursday patient schedule, that *still* would not be enough alone to withstand summary judgment because there is still no genuine issue of material fact to ultimately dispute the lack of retaliatory motive as the final step in Plaintiff's burden. For example, in *Mathew v. North Shore-Long Island Jewish Health Sys., Inc.*, 582 Fed. Appx. 70 (2d Cir. 2014), the plaintiff argued that his termination for stealing company time was based on untruths about the underlying time records. However, in nevertheless affirming summary judgment, the Second Circuit made clear that it was "decidedly not interested in the truth of the allegations against the plaintiff," but rather was "interested in what *motivated* the employer." *Id.* at 71 (emphasis in original). *See also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what motivated the employer."); *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997) ("disputations [of the employer's proffered explanations for the adverse action] were rationalizations for his deficiencies rather than demonstrations of any genuine issue of material fact to be tried.").

Similarly, in *Joseph v. Owens & Minor Distribution, Inc.*, 5 F.Supp.3d 295 (E.D.N.Y. 2014), *aff'd*, 594 Fed. Appx. 29 (2d Cir. 2015), the Court granted summary judgment on Plaintiff's retaliation claims, finding that even where plaintiff presented evidence that the employer had a mistaken understanding about the facts underlying the termination-triggering

10

incident, plaintiff still failed to show that the reason articulated for the termination was instead

based on an actual retaliatory motive. And, in *Robinson v. Zurich N. Am. Ins. Co.,* 892 F.Supp.2d

409, 430-31 (E.D.N.Y. 2012), the Court granted summary judgment based on the same fatal flaw

in Plaintiff's claim in this case:

> It is well settled that the mere fact that an employee
> disagrees with an employer's evaluation of that employee's
> misconduct or deficient performance, or even has evidence
> that the decision was objectively incorrect, does not
> necessarily demonstrate, by itself, that the employer's
> proffered reasons are a pretext for termination. . . . An
> employer may fire an employee for a good reason, a bad
> reason, a reason based on erroneous facts, or for no reason
> at all, as long as its action is not for a discriminatory
> reason.

Defendants anticipate that Plaintiff will attempt to argue the existence of an issue of fact

by claiming that she somehow never knew that she had to work the late patient schedule on

Thursdays. Although Defendants vehemently dispute that there is any doubt that a Physical

Therapy Aide (like Plaintiff) was required to work a shift based on when the physical therapy

patients were actually there, any such purported dispute on that point does not get Plaintiff across

the finish line because she is still unable to demonstrate the *genuine* issue of *material* fact on the

ultimate issue of whether her termination was based on a retaliatory motive about her four prior

FMLA days. Put another way, any argument that the company was wrong or unfair (even if true)

does not *a fortiori* mean the company had a retaliatory motive without any evidence in the record

to create a genuine issue of material fact ultimately on such an unlawful motive. *See also Moore*

*v. Kingsbrook Jewish Med. Ctr.,* 2013 WL 3968748, *7 (E.D.N.Y. Jul. 30, 2013) ("While

Plaintiff may argue that it was unfair for the [employer] to terminate his employment under the

circumstances, because Plaintiff cannot show that the basis for the 'unfairness' was

discriminatory, Plaintiff cannot establish that his termination 'occurred under circumstances giving rise to an inference of discriminatory intent.'").

*Third*, even if Plaintiff raises a "temporal proximity" argument to take advantage of the timing between taking a previously-approved FMLA absence on Friday, August 4th in relation to her subsequent termination on Monday, August 7th, that argument is equally unavailing because the Second Circuit has also confirmed that temporal proximity alone is similarly insufficient to withstand summary judgment without a genuine issue of material fact to dispute the lack of retaliatory motive as the final step in Plaintiff's burden. *See, e.g., Abrams v. Department of Public Safety,* 764 F.3d 244, 254 (2d Cir. 2014) ("temporal proximity alone is not enough to show pretext"); *El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 933 (2d Cir. 2010) ("[W]ithout more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."). *See also DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.,* 2016 WL 3840673, *8 (E.D.N.Y. Jul. 8, 2016), *aff'd,* 699 Fed. Appx. 72 (2d Cir. 2017) ("[a]t best Plaintiff has implied that the temporal proximity between her suit and suspension evidences pretext. However, such temporal proximity alone is not enough to establish pretext in this Circuit.") (*quoting Abrams*).

Plaintiff was told specifically at her termination meeting that she was being terminated because of her failure to follow the Thursday late patient schedule, and that was the only reason given for her termination. Ex. C at 110-12, 114. (56.1 St. at ¶ 48.) And, at the end of the day, Plaintiff unequivocally acknowledged at her deposition that she has no basis to believe that the FMLA played any role in her termination other than the fact that she happened to have taken a day off that prior Friday, August 4th:

> Q:    And other than the fact that you had just taken an FMLA day on Friday, do you have any other basis to believe that your FMLA days were relied

on for your termination?

A:      *No.*[2]

Ex. C at 115 (emphasis added). That says it all.

                    *                    *                    *

In sum, Human Resources decided to terminate Plaintiff's employment in August 2017

for the legitimate, non-retaliatory reason that, in the Company's opinion, she was ultimately

caught stealing time by failing to work her required schedule, after she had previously been

placed on a PIP for other time and attendance issues back in March 2017. There is zero evidence

in the record that anyone considered, discussed, or ultimately decided to terminate her

employment simply because she had previously taken four intermittent days off under the FMLA

to assist her son (that she admits were taken without any issue). Accordingly, Plaintiff's FMLA

retaliation claim should be dismissed. *Rinaldi v. Quality King Distributers, Inc.*, 29 F.Supp.3d

218, 220-21 (E.D.N.Y. 2014) (where plaintiff offered nothing to rebut employer's proffered

termination reason other than temporal proximity, her "speculative argument that her termination

'must have been' related to her FMLA absences is insufficient at the summary judgment stage.").

**B.    Retaliation – Title VII, NYSHRL, NYCHRL**

**1.    The Law**

Retaliation claims under Title VII and the NYSHRL are analyzed using the same

standards. *Green v. Rochdale Village Social Serv., Inc.*, 2016 WL 4148322 (E.D.N.Y. Aug. 4,

---

[2]      It is equally noteworthy that there is no evidence in the record that Swaminaraya (the non-supervisor co-worker who initiated the discussions that resulted in Plaintiff's termination) had any knowledge whatsoever, let alone any animus, about the fact that Plaintiff was out on that same day (*i.e.*, Friday, August 4th) that she decided to raise her concerns to a supervisor about Plaintiff's refusal to work the late Thursday patient schedules. Thus, other than the fortuitousness of her raising the concern on that day, there is nothing in the record to reflect that that August 4th FMLA absence or any of the three prior ones played any part in the discussions about the late Thursday patient schedule issue that were prompted by Swaminaraya.

2016) (Cogan, J.). Here, for federal and state purposes, Plaintiff cannot make a *prima facie* showing that a "causal connection exists between protected activity and adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Ezuma v. City Univ. of NY*, 665 F. Supp.2d 116, 121 (E.D.N.Y. 2009) (Cogan, J.), *aff'd*, 367 Fed. Appx. 178 (2d Cir. 2010). However, even assuming *arguendo* that Plaintiff can articulate a *prima facie* case, Plaintiff ultimately is unable to demonstrate "by competent evidence that the reasons proffered by Defendant were pretext for retaliatory animus based upon the protected Title VII activity." *Id.*

For purposes of the NYCHRL, while more liberally applied than its federal and state counterparts, Plaintiff still must ultimately demonstrate that her termination was "caused at least in part by discriminatory or retaliatory motives." *Isakov v. HASC Center, Inc.*, 2018 WL 1114714, *10 (E.D.N.Y. Feb. 27, 2018) (Cogan, J.). As this Court has made clear, summary judgment is equally available under the City law where, as here, there is nothing in the record to permit a rational juror that ACPNY's stated reason for the termination was false *and* that the real reason was due to a retaliatory motive. *Green,* 2016 WL 4148322 at *8.

## 2. The Lack of Genuine Issue of Material Fact in the Record on Plaintiff's Ultimate Burden

As a parallel theory to her FMLA-based supposition, Plaintiff also posits (for purposes of Title VII, the NYSHRL, and the NYCHRL) that her employment must have been terminated because she allegedly raised an issue with Harrington back in January 2017 about the fact that she did not like some of the statements and conduct of one of her co-workers, David Garziniti ("**Garziniti**"). Ex. C at 147. Garziniti was a Physical Therapy Assistant in the Annadale facility, and there is no dispute that he was never Plaintiff's supervisor. *Id.* at 68. (56.1 St. at ¶ 15.)

Plaintiff's retaliation claims under Title VII, the NYSHRL, and the NYCHRL should be dismissed for four primary reasons. *First*, the record demonstrates that (i) Plaintiff cannot dispute

that it was Human Resources, and not Harrington, that made the decision to terminate Plaintiff's employment on August 7, 2017, and (ii) Plaintiff cannot dispute that she never once complained to Human Resources (the decision maker) about anything having to do with Garziniti. On the former point, Plaintiff testified that she had no knowledge of who made the decision to terminate her employment, and thus cannot contrast the evidence in the record that Harrington did not. *Compare* Ex. C at 15-16 *with* Ex. F at 73-74, 78; Harrington Dec. at ¶ 13; Marcotte Dec. at ¶ 11. (56.1 St. at ¶ 37.)

On the latter point, Plaintiff was equally clear too:

> Q:   Well, did you understand whether, if an employee had a complaint about discrimination, that that would go to human resources?
>
> A:   Yes.
>
> Q:   And what about if an employee believed that they were being harassed at work[]. Would that be something to go to human resources?
>
> A:   Yes.
>
> Q:   Okay. And, so, at any time during your employment at ACP, did you ever make any complaints to Human Resources about anything?
>
> A:   Not to human resources.
>
> \*                          \*                          \*
>
> Q:   But, again I am asking specifically if an employee at ACP believes that he or she was discriminated against or harassed, were those types of complaints the types that were to go to Human Resources?
>
> A:   Yes.
>
> Q:   And you understood that?
>
> A:   Yes.   . . .
>
> Q:   Is there any reason you never went to Meredith [Gamble, HR Director] or anyone at HR directly?

A:      *No.*   . . .

Ex. C at 85-87, 128, 132-33 (emphasis added). (56.1 St. at ¶ ¶ 32-34.)

Therefore, even accepting as true that Plaintiff raised a concern about Garziniti to Harrington seven months prior to her termination, there is no evidence in the record at all that the decision maker (Human Resources) even had knowledge about any protected activity in the first place. Since Plaintiff admits never raising any alleged harassment issue with Human Resources, it should go without saying that one cannot act on protected activity if it was not aware of the protected activity.

*Second*, this Court has also made clear that "unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Isakov*, 2018 WL 1114714 at *7, *quoting Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). For the same reasons discussed above in the FMLA retaliation discussion *supra*, ACPNY had a legitimate, non-retaliatory motive for terminating Plaintiff's employment on August 7, 2017.

There is simply no evidence in the record to suggest that anyone – *let alone the decision maker* – instead had any retaliatory motive in terminating Plaintiff's employment because of alleged complaints Plaintiff made to Harrington about Garziniti seven months prior, and certainly no evidence that any such retaliatory motive was the "but-for" cause of her termination. The fact that Plaintiff testified at her deposition that she believes she was terminated for *multiple* reasons necessarily negates a showing that one of those reasons (the alleged complaint to Harrington) was *the "but-for"* reason. See Ex. C at 8-9 (Plaintiff testifying that she was terminated because she took a day off on Friday, August 4th *and* because she raised issues about

her co-worker *and* because she hurt her shoulder back in 2015 when a ceiling tile fell).

*Third,* for the same reasons as discussed above in the FMLA retaliation context, this Court has reaffirmed that for Title VII purposes "temporal proximity is rarely if ever enough to raise a factual issue of retaliation sufficient to prevent summary judgment." *Butler v. Coca-Cola Refreshments USA, Inc.,* 2013 WL 3324995, *6 (E.D.N.Y. Jul. 1, 2013) (Cogan, J.). *See also* discussion and cases cited *supra.* But even here, with her hostile environment claim, any temporal proximity hook would offer no solace. At most, Plaintiff alleges that she complained to her supervisor Harrington about Garziniti in January 2017. Ex. C at 128. Harrington presumably could have taken adverse action, including terminating Plaintiff, in the ensuing 7 months, but did not, and, as noted above, Plaintiff acknowledges that there were no adverse actions taken against her in all of 2017 prior to her August 2017 termination. *Id.* at 55-56, 74, 80-81, 84-85. (56.1 St. at ¶¶ 26-28.) Thus, other than pure conjecture, and again putting aside that Harrington was not even the ultimate decision maker, Plaintiff has nothing else to offer from the record to raise a genuine issue of material fact that a discussion she had with Harrington had anything to do with her termination a whole seven months later.

*Fourth,* and also for the same reasons as discussed above, even if Plaintiff were able to raise an issue of fact on whether ACPNY was incorrect about Plaintiff's understanding of the late Thursday patient schedule, that *still* would not be enough alone to withstand summary judgment on the retaliation claim here because there is still no genuine issue of material fact to dispute the lack of retaliatory motive as the final step in Plaintiff's burden. *See* discussion and cases cited *supra.*

It is axiomatic that this Court should not act as a "super personnel department" and allow Plaintiff to use Title VII as a vehicle for judicial second-guessing of ACPNY's business

decisions. *Timbie v. Eli Lilly & Co.,* 2011 WL 2600541 (2d Cir. Jul. 1, 2011). *See also Jordan v. Olsten Corp.,* 111 F. Supp.2d 227 (W.D.N.Y. 2000), *aff'd,* 25 Fed. Appx. 45 (2d Cir. 2001) (plaintiff "cannot evade precedent from this circuit which provides that Title VII does not provide remedies against poorly thought-out or unwise employment actions"). Consequently, as with the FMLA retaliation analysis, the complete dearth of anything in the record to show that ACPNY's legitimate reason is false *and* that the real reason was instead an ***unlawful*** one is fatal to Plaintiff's claim here too. Simply disagreeing with the reason for Plaintiff's termination, or even suggesting a (bona fide) dispute over Plaintiff's knowledge of the late Thursday patient schedule, is not enough standing alone to create a genuine issue of material fact on the ultimate "but-for" retaliatory motive element to withstand summary judgment on this claim.

The above four primary reasons why there is no genuine issue of material fact to withstand summary judgment under Title VII and the NYSHRL apply equally to the NYCHRL as well. Nevertheless, there are two additional bases for dismissal of Plaintiff's retaliation claim under the NYCHRL. Under Section 8-107[7] of the NYCHRL, unlawful "retaliation" is defined specifically as an adverse action because Plaintiff "(i) opposed any practice forbidden under this chapter[,]" However, and for the reasons discussed *infra* in Point II, the alleged conduct constituting "gender discrimination and/or hostile environment," even if the allegations are accepted as true, does not rise to the level of a "practice forbidden under this chapter." Thus, there can be no unlawful retaliation under the NYCHRL without such a predicate finding.

Furthermore, also under Section 8-107[7] of the NYCHRL, the alleged conduct "must be reasonably likely to deter a person from engaging in protected activity." That standard cannot be met in this case, since, as quoted above, Plaintiff does not even claim that she was deterred from complaining to Human Resources for any reason, and, in fact, testified that she had no reason

why she never complained to Human Resources about alleged issues with Garziniti. Ex. C at 85-87, 128, 132-33. (56.1 St. at ¶ ¶ 33-34.) Thus, even accepting Plaintiff's allegations as true, there similarly cannot be unlawful retaliation under the NYCHRL without the Section 8-107[7] predicate evidence.

*       *       *

In sum, and largely for the reasons discussed *supra* that warrant a dismissal of Plaintiff's FMLA retaliation claim, there is also zero evidence in the record that Human Resources personnel (who made the decision to terminate Plaintiff's employment) ever considered, discussed, or ultimately decided to terminate her employment because of any concerns that Plaintiff allegedly raised about Garziniti to Harrington a full seven months before her termination. Beyond Plaintiff's own conclusory belief and supposition, there is simply nothing to connect the two attenuated events. Accordingly, Plaintiff's retaliation claims under Title VII, the NYSHRL, and the NYCHRL should also be dismissed. In the alternative, in the event the Court solely dismisses the federal law retaliation claims under the FMLA and Title VII, Defendants respectfully submit that the Court should not maintain supplemental jurisdiction to hear only claims under state and/or city law.

### POINT II

**SUMMARY JUDGMENT IS APPROPRIATE ON
PLAINTIFF'S "GENDER HARASSMENT, HOSTILE ENVIRONMENT"
CLAIMS BECAUSE THE ALLEGED CONDUCT, EVEN IF TRUE,
<u>DOES NOT RISE TO THE LEVEL OF A VIABLE CAUSE OF ACTION</u>**

**A.    <u>The Law</u>**

This Court has made clear that "[a]nti-discrimination laws 'are intended to protect employees from genuine workplace mistreatment and harassment; they are not intended to guarantee that employees will never suffer inconveniences or that their every desire will be

19

fulfilled. *Leizerovici v. HASC Center, Inc.*, 2018 WL 1115348, *5 (E.D.N.Y. Feb. 27, 2018) (Cogan, J.) (quotations omitted). Thus, a Title VII hostile environment claim requires a showing that the workplace is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*, quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

This Court has also reaffirmed that Title VII and the NYSHRL require that "the conditions of [her] employment have been materially altered by discriminatorily motivated abuse" and that "the conduct at issue cannot be merely tinged with offensive sexual connotations, but must actually constitute discrimination because of sex." *Id.* And, while the NYCHRL requires separate analysis to effectuate its broad construction, Plaintiff still must show conduct that was "caused by a discriminatory motive" and particularly "driven by discriminatory animus against a protected characteristics of hers." *Id.* at *11-12.

**B.**     **The Lack of Genuine Issue of Material Fact to Dispute That the Alleged Conduct -- Even Accepted as True -- Does Not Rise to the Level Of a "Gender Harassment, Hostile Environment" as a Matter of Law**

The basis of Plaintiff's "gender harassment, hostile environment" claims is that Garziniti allegedly engaged in sexual harassment toward Plaintiff. There is no dispute that Garziniti was never Plaintiff's supervisor, and was only a co-worker. Ex. C at 68. (56.1 St. at ¶ 15.) In any event, there is no genuine issue of material fact in the record from which a rational juror could conclude that the named Defendants in this case (Garziniti is not a defendant) are liable for a sexually hostile environment as a matter of law.

As a threshold matter, even assuming the alleged comments were made as Plaintiff claims, Plaintiff's deposition testimony was clear that there were only four relatively innocuous comments made toward Plaintiff, that were not at all "severe or pervasive" and never actually

altered her working conditions to the level required under Second Circuit precedent. Nor were all the alleged comments truly directed toward Plaintiff, and overall they lack the frequency and intensity required. Specifically, Plaintiff alleges only the following four comments directed toward her in the six years she worked off and on with Mr. Garziniti (56.1 St. at ¶ 29):

- o  December 2015: In the course of a group conversation, Garziniti allegedly joked about whether Plaintiff punished her husband the night before. Ex. C at 120-23.

- o  December 2016: In the course of a group conversation about weight, Mr. Garziniti allegedly joked that Plaintiff could come and sit on his lap and he'd tell her how much she weighed. *Id.* at 123-25.

- o  January 2017: Plaintiff grabbed a large physio ball to give to a patient and showed the patient how to use it, and Mr. Garziniti allegedly joked to "make sure you don't hurt that ball like you hurt your husband." *Id.* at 126-27.

- o  January 2017/February 2017: Plaintiff went into work late and looked tired, and Mr. Garziniti allegedly joked whether her fiancé had kept her up late the night before. *Id.* at 127-28.

That is it according to Plaintiff's testimony. No other "sexually charged" comments were allegedly made *to Plaintiff* by Garziniti. *Id.* at 128.

Plaintiff further acknowledges that Garziniti also made alleged "sexual harassment" comments toward a *male* employee at ACPNY as well: ACP's Regional Manager, Peter DeCesare, with whom Garziniti had a good relationship. According to Plaintiff, Garziniti allegedly said to Mr. DeCesare who was getting on one of the physical therapy treatment tables: "Ok, lay down, face down, ass up, you know how I do this" (Ex. C at 125-26; 56.1 St. at ¶ 31), and also allegedly said to Mr. DeCesare while he got on one of the treatment tables on another occasion: "you know what to do, get on all fours, I'm coming in with the ball baby" or "this is the new stick I'm using on you tonight" (*Id.* at 140-42; 56.1 St. at ¶ 31).

Continuing to concede that any alleged comments were not just directed to her, and certainly not just to females, Plaintiff admitted that any sexual harassment comments were made by Garziniti toward male *and* female *patients with whom he had had a relationship over the years*, such as: "we have black (physio) balls and green (physio) balls, which do you want between your legs today?" *Id.* at 139-40. (56.1 St. at ¶ 31.) No patient ever complained about any of Garziniti's alleged joking during treatment. *Id.* at 140; Ex. F at 81, 84. (56.1 St. at ¶ 35.) In any case, Plaintiff expressly confirmed at her deposition that the above alleged statements constitute the total universe of the alleged sexual harassment, and Plaintiff is not aware of and is not alleging any other sexually-related comments made by Garziniti. Ex. C at 142-43, 146. (56.1 St. at ¶ 30.)

The alleged statements, even if true, fall woefully short of the Second Circuit's "severe or pervasive" standard, and did not as a matter of law transform the physical therapy department into one that was so permeated with sexually-hostile conduct and discriminatory animus against *Plaintiff's* gender that it "materially altered" her working conditions. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998) (alleged incidents involving a supervisor making comments about plaintiff's body, and touching plaintiff's breasts with some papers, did not rise to the required level); *Byrne v. Telesector Resources Group, Inc.*, 2009 WL 2019951, *4 (2d Cir. Jul. 14, 2009) (incidents involving plaintiff and other female employees amounting to giving out work fax number as "25penis" and on several occasions discussing topics that were inappropriate and sexual in nature did not rise to the sufficient threshold); *Carter v. State of New York*, 2005 WL 2460116, *1 (2d Cir. Oct. 5, 2005) (three physical kisses on cheek do not meet threshold); *Rizzo-Puccio v. College Auxiliary Serv., Inc.*, 216 F.3d 1073, *3 (2d Cir. 2000) ("As a general

matter, however, isolated remarks or occasional episodes of harassment do not constitute a hostile environment within the meaning of Title VII.").

In *Vito v. Bausch & Lomb Inc.*, 403 Fed. Appx. 593 (2d Cir. 2010), the Second Circuit affirmed summary judgment on plaintiff's hostile work environment claim, ruling:

> [Plaintiff's] few allegations of harassment targeted at her are relatively minor . . . These incidents amount to little more than "the sporadic use of abusive language, gender-related jokes, and occasional teasing" that fail to create a hostile environment. . . . Though no doubt irritating, inappropriate, and offensive, the harassment [Plaintiff] alleges is less severe than the overtly sexual conduct that we found insufficient to sustain a hostile work environment in *Quinn.*

Also instructive on the hostile environment standard is the recent decision in this District in *Husser v. New York City Dep't of Ed.*, 137 F.Supp.3d 253 (E.D.N.Y. 2015), where plaintiff alleged ten incidents over a three-year period that involved sexual-related e-mail exchanges and comments at employee gatherings. *Id.* at 275-76. Specifically, the alleged comments included a supervisor referring to an executive director as "she is hot, I'd do her," references to the size of his genitalia, the supervisor mouthing the word "blow me" and using other obscenities to describe women, and referring to certain dress attire in sexually-suggestive ways. *Id.* The Court held that the allegations were not sufficiently pervasive or severe, and did not alter the terms or conditions of Plaintiff's employment:

> Viewed in the aggregate, the conduct of which [Plaintiff] complains is no more pervasive and severe than conduct in other cases that courts have found insufficient to support liability. . . . The hostile work environment claims under the NYCHRL fails for similar reasons. Although a claim under that statute required [Plaintiff] to show only that she "has been treated less well than other employees because of her gender," I conclude that her hostile work environment allegations do not satisfy even that more forgiving standard.

*Id.* at 277 (citations omitted).

Indeed, courts routinely dismiss hostile environment claims when they are directed at both men and women and, thus, are not "because of sex." *Cobb v. Morningside at Home, Inc.,* 2009 WL 874612, *8-9 (S.D.N.Y. Mar. 31, 2009). As particularly relevant to the instant case, the Court held in *Russo v. New York Presb. Hosp.,* 972 F. Supp.2d 429, 453 (E.D.N.Y. 2013):

> Adkins may have said offensive and inappropriate comments, acted inappropriately on occasion, and may have been a difficult person to work with, but there is no evidence he created an environment that was particularly difficult for women, subject Plaintiff to unwanted sexual attention, or otherwise treated Plaintiff "less well" because she was a woman.

Plaintiff expressly admitted that she is unable to identify anyone at ACPNY who was treated better because of their gender, or who otherwise discriminated against her because of her gender. Ex. C at 117, 146-47. (56.1 St. at ¶ 36.)

*       *       *

In sum, the evidence in the record, even accepting Plaintiff's allegations as true, do not rise to the level of a sexually hostile environment as a matter of law. Accordingly, Plaintiff's "gender harassment, hostile work environment" claims under Title VII, the NYSHRL, and the NYCHRL should also be dismissed. In the alternative, in the event the Court solely dismisses the federal hostile environment claims under Title VII, Defendants respectfully submit that the Court should not maintain supplemental jurisdiction to hear claims only under state and/or city law.

## CONCLUSION

> Considering the relative ease of bringing a suit alleging discrimination and the difficulty and expense of defending against such a suit, courts correctly find summary judgment proper where allegations of discriminatory intent are merely conclusory.

*Christopher-Ketchum v. Agway Energy Prod.,* 988 F. Supp. 610, 613 (N.D.N.Y. 1997).

That is precisely this case. Plaintiff's pleading alleges that her employment "must have been" terminated on August 7, 2017 because she happened to take four (approved) days off after submitting her FMLA request (which was granted), and because she raised a concern to Harrington (non-decision maker) about Garziniti seven months before her termination. However, at this stage in the case, there must be *evidence* to create a genuine issue of material fact to support her own perceptions. No such evidence exists in the record.

The laws upon which Plaintiff rely necessarily address discrimination and retaliation; they do not address mere day-to-day performance-based issues between an employer and employee or an employee's after-the-fact perception of what may be fair, or even wrong. Accordingly, Defendants respectfully request that the Court grant their instant motion for summary judgment and dismiss the remaining claims in the Complaint in their entirety.

Dated: New York, New York
April 22, 2019

Respectfully submitted,

COZEN O'CONNOR
Attorneys for Defendants

By: _____

Michael C. Schmidt (MS7841)
277 Park Avenue
New York, New York 10172
(212) 453-3937