UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
VERONIKA CHAUCA,  :
 :
           Plaintiff,  :
 :  **MEMORANDUM DECISION AND**
     -against-  :  **ORDER**
 :
ADVANTAGECARE PHYSICIANS, P.C., et  :  18-cv-2516 (BMC)
al.,  :
 :
           Defendants.  :
 :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff brought this employment discrimination action against her former employer, AdvantageCare Physicians, P.C. ("ACP"); ACP's corporate parents; and her former supervisor, Tara Harrington. Defendants have moved for summary judgment.

The issue comes down to whether a reasonable jury could find that, although the employer granted all of plaintiff's requests for FMLA leave, it didn't like doing it, so that when a bona fide justification for terminating plaintiff arose, this resentment about the FMLA leave could have substantially influenced the termination decision. There is circumstantial evidence suggesting such influence. The motion for summary judgment therefore is granted in part and denied in part for the reasons stated below.

## BACKGROUND

Plaintiff was a physical therapy aide for ACP. As a physical therapy aide, plaintiff assisted physical therapists and performed minor administrative functions. Plaintiff rotated between two ACP medical facilities: a facility at 1050 Clove Road (the "Clove Road Facility")

and a facility at 4771 Hylan Boulevard (the "Annadale Facility"). Tara Harrington is the Clove Road Facility manager and Susanne Marcotte is the Annadale Facility manager.

As set forth below, plaintiff was terminated after taking Family and Medical Leave Act ("FMLA") leave and also after complaining about the conduct of a coworker. Plaintiff claims that defendants created a hostile work environment and terminated her in retaliation for her complaints and for taking FMLA leave. Defendants claim plaintiff was terminated for not working the proper hours. Plaintiff brings claims for retaliation under the FMLA, Title VII, the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL"), as well as claims for a hostile work environment under Title VII, the NYSHRL, and the NYCHRL.[1]

## I. FMLA Leave

On July 29, 2015, plaintiff was at the Clove Road Facility when a ceiling panel fell on her, injuring her neck and shoulder. Plaintiff applied for and received FMLA leave for the neck and shoulder injury. Plaintiff claims that after she took FMLA leave, Harrington began to treat her differently and became less responsive to plaintiff's emails.

In January 2017, plaintiff's young son started getting sick. Plaintiff began taking her Paid Time Off ("PTO") days to care for him. In March 2017, Harrington placed plaintiff on a 90-day Performance Improvement Plan ("PIP") for taking PTO days without adequate notice on seven occasions in three months. Harrington met with plaintiff twice a week during the PIP to discuss her performance. Plaintiff successfully completed the PIP.

---

[1] Plaintiff initially brought a claim for interference under the FMLA but withdrew this claim before defendants moved for summary judgment.

In May 2017, plaintiff applied for FMLA leave. While that application was under submission, on June 6, 2017, Harrington emailed plaintiff and two other ACP employees to tell them that "many employees have been interrupting our physicians to consult on their children's health, to be seen, and or have friends or family members seen in this office. This is not acceptable."

Approval for plaintiff's FMLA leave was granted on June 8, 2017. Over the next three months, plaintiff took four days of FMLA leave – on June 12, 2017, June 23, 2017, July 7, 2017, and August 4, 2017 – and one day was retroactively approved as an FMLA leave day. The last day of FMLA leave that plaintiff took was on August 4, 2017. Each time plaintiff requested permission to take FMLA leave, plaintiff received approval.

## II. David Garziniti

While she worked at the Annadale Facility, plaintiff worked with David Garziniti, a physical therapy assistant who was never plaintiff's supervisor. Plaintiff heard Garziniti make "sexual comments" to female patients, as well as to male and female employees of ACP. For instance, Garziniti made sexual comments to Peter DeCeasar, the regional manager, including: "face down, ass up, you know how I like to do this;" "this is the new stick I'm going to use on you tonight;" and "you know what to do, get on all fours, I'm coming in with the ball baby … ." Plaintiff also claims that Garziniti "made sexually harassing gestures," including "placing the physio ball between his legs and humping it."

Plaintiff further claims that Garziniti made inappropriate comments to plaintiff, and has specifically identified four inappropriate comments. First, in December 2015, Garziniti joked about whether plaintiff punished her husband the night before. Second, December 2016, Garziniti joked that if plaintiff sat on his lap, he could tell her how much plaintiff weighed.

3

Third, in January 2017, plaintiff showed a patient how to use a physio ball, and Garziniti joked to plaintiff that she should "make sure you don't hurt the ball like you hurt your husband." Fourth, in January or February 2017, after plaintiff went to work late and appeared tired, Garziniti joked about whether plaintiff's fiancé kept her up late the night before.

ACP's sexual harassment policy indicates that employees may complain to the human resources department ("HR") or to their supervisors about sexual harassment. If employees complain to their supervisors, then the policy requires supervisors to report the complaints to HR. Plaintiff did not complain to HR about Garziniti's comments because, notwithstanding ACP's sexual harassment policy, plaintiff believed that HR only dealt with administrative issues, excluding sexual harassment complaints.

Although plaintiff did not complain to HR, plaintiff claims that she complained about Garziniti's conduct to Harrington in January 2017, as well as to DeCaesar and to Brinda Swaminaraya, a physical therapist. Her most recent complaint was to Swaminaraya, and this complaint was in July 2017. Plaintiff believes that these individuals did not report her complaints to HR. Notwithstanding her complaints about Garziniti, plaintiff does not believe that any men in the physical therapy department were treated better than plaintiff because they were male.

### III. Plaintiff's Work Schedule

The parties disagree about plaintiff's correct work schedule at the Annadale Facility on Thursdays. Defendants claim that plaintiff was supposed to work from 11 AM until 8 PM on certain Thursdays at the Annadale Facility when patients were present from 11 AM until 8 PM. However, plaintiff claims that she was supposed to, and did, work from 9 AM until 5 PM on those days unless a supervisor asked her to work different hours.

On August 4, 2017, Swaminaraya expressed concern to Marcott that plaintiff did not work the correct schedule, i.e. 11 AM until 8 PM, on multiple Thursdays, including on August 3. During her deposition, Swaminaraya indicated that when she entered the office at 11 AM on these Thursdays, she noticed that plaintiff was "doing nothing." At 5 PM on these Thursdays, plaintiff would leave the office even though patients were still present.

Swaminaraya explained that plaintiff's departure at 5 PM particularly affected Swaminaraya's ability to work with patients when the physical therapist assistant was on vacation, leaving Swaminaraya to work with patients by herself after 5 PM. According to Swaminaraya, plaintiff stated that her schedule "has nothing to do with [Swaminaraya], this is between [plaintiff] and HR." Plaintiff denies that anyone at ACP told plaintiff to work any schedule other than 9 AM until 5 PM.

After Swaminaraya expressed her concerns to Marcott, they both called Harrington to express concern about plaintiff's hours. Harrington explained that, before Swaminaraya and Marcott called her, Harrington did not know plaintiff's exact hours since she did not review employees' time records. After Swaminaraya called her, Harrington wrote to other ACP employees in an email that they should "really think about dissolving [plaintiff's] role" because of "her limited scope of practice and her chronic issues with time and attendance … ."

Harrington also wrote a memorandum, dated August 4, 2017, that memorialized her call with Swaminaraya and Marcott. The memorandum indicated that, according to Swaminaraya, plaintiff: showed up and left work early on multiple days; would sit alone in the department when she arrived early; left the physical therapist alone for hours when she left early; and, when Swaminaraya directed plaintiff to follow the proper schedule, plaintiff replied that her schedule "has nothing to do with [Swaminaraya], this is between [plaintiff] and HR."

5

### IV. Plaintiff's Termination

On Monday August 7, 2017, plaintiff was terminated. Defendants claim, and plaintiff does not deny, that HR made the decision to terminate plaintiff. Plaintiff was informed that she was terminated for failure to work the proper hours.

## **DISCUSSION**

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

A dispute as to a material fact is "'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The opposing party must put forward some "concrete evidence from which a reasonable juror could return a verdict in his favor" to withstand a motion for summary judgment. Id. at 256. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Id. When deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (internal quotation mark omitted).

"It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). The Second Circuit has explained that "the salutary purposes of summary

6

judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to other areas of litigation." Id. (internal quotation marks and alterations omitted).

## I. FMLA Retaliation

Courts "analyze the retaliation claims brought pursuant to the FMLA under the burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Graziadio v. Culinary Institute of America, 817 F.3d 415, 429 (2d Cir. 2016). "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Id. (internal quotation marks and alterations omitted).

"If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual." Id. To succeed on an FMLA retaliation claim, a plaintiff need only show that taking FMLA leave was a "motivating factor" in the adverse employment action, rather than a "but for" cause of the adverse employment action. See Woods v. START Treatment & Recovery Centers, Inc., 864 F.3d 158, 164 (2d Cir. 2017).

Here, a reasonable juror could find that defendants terminated plaintiff in retaliation for taking FMLA leave. Plaintiff has established a *prima facie* claim for FMLA retaliation: she was qualified to work as a physical therapy aide,[2] exercised her rights under the FMLA, and was terminated in circumstances giving rise to an inference of retaliatory intent. Specifically, plaintiff was terminated three days after she took FMLA leave and Harrington made comments

---

[2] The parties have not specifically addressed plaintiff's qualifications, but the record here is sufficient for plaintiff to meet this element of a *prima facie* case. The record shows that plaintiff had years of experience as a physical therapy aide at the time and defendants have not disputed that plaintiff was qualified for her job.

in her June 6, 2017 and August 4, 2017 emails that – when read in a manner favorable to plaintiff – indicated disapproval of plaintiff taking time off of work for FMLA leave.

Defendants have provided a non-discriminatory reason for plaintiff's termination: she was "stealing time" by working the wrong schedule. But plaintiff was not "stealing time" in the traditional sense of inaccurately recording the hours she worked. There is no evidence that she failed to accurately record her hours. Rather, defendants' claim is that the hours she worked did not properly align with the hours of the physical therapists who plaintiff was supposed to be assisting.

However, plaintiff has adduced sufficient evidence for a reasonable juror to find that FMLA leave was a motivating factor in plaintiff's termination. Viewing the record in plaintiff's favor, as is necessary on defendants' motion for summary judgment, Liberty Lobby, Inc., 477 U.S. at 256, Harrington expressed repeated frustration at plaintiff's time off from work.

On June 6, 2017 – a month after plaintiff applied for FMLA leave – Harrington emailed plaintiff and two other ACP employees to tell them it "is not acceptable" for employees to "interrupt[]" ACP's "physicians to consult on their children's health … ." Further, on August 4, 2017 – when plaintiff took FMLA leave – Harrington sent an email in which she indicated that ACP should "really think about dissolving [plaintiff's] role" because of "her limited scope of practice and her chronic issues with time and attendance … ." A reasonable juror could conclude that these "chronic issues" related solely to plaintiff's schedule on the Thursdays when defendants claim plaintiff should have been working late. But a reasonable juror could also conclude that plaintiff's "chronic" issues with time and attendance included plaintiff's FMLA leave, which she took the same day that Harrington sent this August 4, 2017 email and also three separate times in the two months leading up to this email.

Defendants' arguments to the contrary are not persuasive.  Defendants note "temporal proximity is insufficient to satisfy [plaintiff]'s burden to bring forward some evidence of pretext." El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).  But here, plaintiff has adduced evidence of pretext beyond proximity alone, including Harrington's June 6, 2017 and August 4, 2017 emails.

Defendants contend that neither email constituted an adverse employment action:  the June 6, 2017 email was a reprimand to multiple employees rather than a termination, and the August 4, 2017 email was a recommendation that led to plaintiff's termination rather than a termination by itself.  However, these emails speak to Harrington's intent.  A reasonable juror could find that these emails suggested that Harrington was unhappy with plaintiff's FMLA leave, and then find that these emails – in conjunction with plaintiff's claim that Harrington began to treat her differently after she first took FMLA leave – suggest that FMLA leave was a motivating factor in ACP's decision to terminate plaintiff upon Harrington's recommendation.

Defendants also claim that there is no evidence that defendants knew about plaintiff's hours before Swaminaraya complained to Harrington about plaintiff's schedule.  But defendants do not deny that plaintiff properly recorded her hours, so Harrington, as well as the rest of ACP management, could have determined whether plaintiff was working 11 AM until 8 PM on the Thursdays when patients stayed late.  Harrington also met with plaintiff twice a week during her PIP to discuss her performance, and during these meetings Harrington either determined or could have determined whether plaintiff worked from 11 AM until 8 PM on the "late patient" Thursdays.

Plaintiff also completed the PIP while she working 9 AM until 5 PM on Thursdays, and there is no evidence that plaintiff's schedule impacted plaintiff's successful completion of the

PIP. Defendants thus either knew plaintiff's hours or did not monitor's plaintiff's schedule, which would allow a reasonable juror to doubt whether defendants were as concerned with plaintiff's schedule as they purported to be when they terminated her.

Defendants further contend that, even if plaintiff was correct that her proper hours were always 9 AM until 5 PM, there would still not be a genuine dispute as to a material fact since "'we are decidedly not interested in the truth of the allegations against plaintiff' when evaluating pretext." Mathew v. N. Shore-Long Island Jewish Health Sys., Inc., 582 F. App'x 70, 71 (2d Cir. 2014) (quoting McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006)). "Instead, we are interested in what motivated the employer." Matthew, 582 F. App'x at 71 (internal quotation marks, alterations, and emphasis omitted). That is true; even if the issue over plaintiff's hours was a result of a miscommunication, termination based on the employer's interpretation of the miscommunication, by itself, would not suggest discrimination. Here, however, plaintiff has adduced sufficient evidence that her FMLA leave was a motivating factor in her termination as to make summary judgment inappropriate.

## II. Retaliation under Title VII and the NYSHRL

A Title VII retaliation claim is evaluated under a similar McDonnell Douglas burden-shifting framework. A *prima facie* case requires plaintiff to show that: (1) she "engaged in protected participation or opposition under Title VII;" (2) "that the employer was aware of this activity;" (3) "that the employer took adverse action against the plaintiff;" and (4) "that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006).

"The burden then shifts to defendants to provide a legitimate, non-retaliatory reason for the adverse employment action." Green v. Rochdale Vill. Soc. Servs., Inc., 15-cv-5824, 2016 WL 4148322, at *7 (E.D.N.Y. Aug. 4, 2016). "At step three of the analysis, plaintiff must identify an issue of material fact that would enable the jury to find that the reason given by defendant is pretext for retaliatory animus based upon the protected Title VII activity … ." Id. (internal quotation marks omitted).

"If a defendant establishes a legitimate, non-discriminatory reason for the adverse action, the plaintiff must present evidence that retaliation was the 'but-for' cause of the action." Montanez v. McDean LLC, 770 F. App'x 592, 595 (2d Cir. 2019) (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013)). "Plaintiff's NYSHRL discrimination claims are analyzed identically to h[er] Title VII claims, and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under Title VII." Leizerovici v. HASC Ctr., Inc., 17-cv-5774, 2018 WL 1115348, at *9 (E.D.N.Y. Feb. 27, 2018) (internal quotation marks omitted).[3]

No reasonable juror would find in plaintiff's favor on the Title VII and NYSHRL retaliation claims. Even assuming plaintiff can make out a *prima facie* case of retaliation for complaining about Garziniti, defendants can point to a legitimate reason for terminating plaintiff: she failed to work the proper hours on Thursdays. The burden then shifts to plaintiff, who cannot show that defendants' reason for terminating plaintiff was pretextual.

---

[3] However, "Title VII does not impose liability on individuals" whereas "individuals may be held liable under the [NYS]HRL … ." Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012). Thus, if the Court did not dismiss all of plaintiff's claims under both statutes, Harrington would have been exposed to liability under Title VII but not under the NYSHRL.

Although a reasonable juror could find in favor of plaintiff on the FMLA claims, the Title VII and NYSHRL retaliation claims are governed by a more demanding standard. Plaintiff may succeed on her FMLA retaliation claim by showing that taking FMLA leave was a "motivating factor" in her termination, see Woods, 864 F.3d at 164, but to succeed on a Title VII or NYSHRL retaliation claim, plaintiff must meet a more demanding standard by "present[ing] evidence that retaliation was the 'but-for' cause of" her termination. Montanez, 770 F. App'x at 595.

Plaintiff claims that she complained to Harrington, DeCaesar, and Swaminaraya about Garizniti, but there is no evidence that anyone expressed any dissatisfaction with or disapproval of her complaints about Garziniti. Further, defendants have asserted – and plaintiff has not denied – that HR made the decision to terminate plaintiff. Since plaintiff contends that none of these individuals reported her complaints to HR, and there is no evidence that ACP's management was even aware of these complaints, no reasonable juror could conclude that plaintiff's complaints about Garziniti were the "but for" cause of HR's decision to terminate her.

Plaintiff faults Harrington, DeCaesar, and Swaminaraya for not reporting plaintiff's complaints to HR because plaintiff claims ACP's policy required them to report plaintiff's complaints. ACP's sexual harassment policy specifically provides that employees may report complaints about sexual harassment to HR, notwithstanding plaintiff's belief that HR only addresses administrative issues. Thus, to the extent plaintiff sought to inform HR about her complaints, she could have informed HR directly. Nonetheless, regardless of whether it was plaintiff's fault or her supervisors' fault that HR was unaware of plaintiff's complaints, no reasonable juror would find in plaintiff's favor without any evidence that HR was even aware of plaintiff's complaints.

Further, even if Harrington's recommendation was the "but for" cause of HR's decision to terminate her, plaintiff would still not be able to show that her complaints were the "but for" cause of Harrington's recommendation to terminate plaintiff. Plaintiff only complained to Harrington in January 2017, well before her termination in August 2017.[4] Although there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001), the relatively lengthy period of time between January and August 2017 weakens any claim that plaintiff's complaint was the "but for" cause of her termination. Further, there is no evidence of Harrington expressing any disapproval of plaintiff's complaints. Plaintiff's Title VII and NYSHRL retaliation claims are dismissed.

### III. Retaliation under the NYCHRL

"Retaliation claims under the … NYCHRL are also analyzed under the McDonnell Douglas framework." Thrane v. Metro. Transportation Auth., 115-cv-7418, 2019 WL 3388922, at *3 (E.D.N.Y. July 26, 2019). However, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation mark and citations omitted). "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's

---

[4] Plaintiff has also indicated that she complained to Swaminaraya and DeCeasar, but there is no evidence that they informed Harrington of plaintiff's complaints and plaintiff contends that they never told HR.

discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Id. at 112. (internal citations omitted).

Despite the liberal construction of the NYCHRL, no reasonable juror would find in favor of plaintiff on the NYCHRL retaliation claim. There is no evidence that HR, which decided to terminate plaintiff, even knew about plaintiff's complaints. Even if Harrington's recommendation caused HR to make the decision to terminate plaintiff, the connection between plaintiff's complaint to Harrington and plaintiff's termination is too attenuated for plaintiff to be able to show that her termination was "as a result" of her complaint. Id. Further, no reasonable juror could find that plaintiff's termination was the result of her complaints to DeCaesar and Swaminaraya because there is no evidence that defendants were even aware of these complaints. Thus, plaintiff's NYCHRL retaliation claim is dismissed.

### IV. Hostile Work Environment under Title VII and the NYSHRL

"To show that she was subjected to sex discrimination by virtue of a hostile work environment," plaintiff must show that there was "conduct (1) that is objectively severe or pervasive—that is, conduct that creates an environment that a reasonable person would find hostile or abusive … , (2) that the plaintiff subjectively perceives as hostile or abusive … , and (3) that creates such an environment because of plaintiff's sex ... ." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (internal quotation marks and alterations omitted). Where, as here, the alleged hostile work environment is the result of conduct by plaintiff's co-worker, rather than a supervisor, plaintiff must also show that the employer "is responsible for the continued hostility of the work environment." Id.

In assessing a hostile work environment claim, "courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks and alterations omitted). "In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (internal quotation marks omitted).

Although "even one incident of sufficient severity can create a hostile work environment," generally "isolated remarks or occasional episodes of harassment do not constitute a hostile environment within the meaning of Title VII." Rizzo-Puccio v. Coll. Auxiliary Servs., Inc., 216 F.3d 1073, 2000 WL 777955, at *3 (2d Cir. 2000). Evidence that "colleagues discuss[ed] topics that were inappropriate and sexual in nature," or otherwise engaged in unprofessional behavior, is insufficient to sustain a hostile work environment claim. Byrne v. Telesector Res. Grp., Inc., 339 F. App'x 13, 18 (2d Cir. 2009). "Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006).

The evidence of a hostile work environment under Title VII and the NYSHRL that plaintiff has adduced could not persuade a reasonable juror. As an initial matter, plaintiff has not adduced sufficient evidence that, to the extent there was a hostile work environment, it was the result of her sex. Garziniti's comments to Peter DeCaesar were even more sexually charged and at least as potentially offensive as his comments to plaintiff. "Because the touchstone of the Title VII inquiry is discrimination, and [Garziniti's] comments were *equally* offensive to both

15

men and women, Plaintiff's hostile work environment claim must fail." Cobb v. Morningside at Home, Inc., 06-cv-13161, 2009 WL 874612, at *9 (S.D.N.Y. Mar. 31, 2009).

Further, despite plaintiff's claim that Garziniti made inappropriate comments to plaintiff "constantly," plaintiff has only identified four comments to plaintiff and one gesture by Garziniti – in addition to other comments that Garziniti made to individuals besides plaintiff – that purportedly created this hostile work environment. Although Garziniti's conduct may have been inappropriate, his conduct merely constituted "isolated remarks or occasional episodes of harassment" rather than the severe and pervasive conduct that would lead to a hostile work environment. See Rizzo-Puccio, 2000 WL 777955, at *3. The Second Circuit has rejected hostile work environment claims under circumstances far more severe than those present here. See, e.g., Vito v. Bausch & Lomb Inc., 403 F. App'x 593, 596 (2d Cir. 2010) (holding that multiple colleagues' repeated sexual banter, gestures, and inappropriate physical contact were insufficient for a hostile work environment claim); Carter v. State of New York, 151 F. App'x 40, 41 (2d Cir. 2005) ("Three kisses on the cheek in a two-year period, in the absence of any other discriminatory or offensive treatment, do not meet the threshold this Court has established for hostile work environment claims."); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (holding that a supervisor's conduct was insufficient for a hostile work environment claim although the supervisor touched plaintiff's breasts with papers he was holding and told her "she had been voted the 'sleekest ass' in the office") (internal quotation marks omitted).

Thus, plaintiff has not shown that she experienced conduct that was objectively severe or pervasive or on the basis of sex. Because plaintiff has failed to establish these elements of a hostile work environment claim, the Court need not and does not determine whether she has

established any other elements of her hostile work environment claim.  See Dauer v. Verizon Commc'ns Inc., 03-cv-05047, 2009 WL 186199, at *5 n.4 (S.D.N.Y. Jan. 26, 2009).  Plaintiff's Title VII and NYSHRL hostile work environment claims are dismissed.

### V. Hostile Work Environment under the NYCHRL

"To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive; the NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct."  Gorokhovsky v. New York City Hous. Auth., 552 F. App'x 100, 102 (2d Cir. 2014) (internal quotation marks omitted).  "In a hostile work environment claim under the NYCHRL, even a single comment may be actionable in appropriate circumstances."  Id. (internal quotation marks omitted).

However, "the NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives, or if the defendant proves the conduct was nothing more than petty slights or trivial inconveniences … ."  Mihalik, 715 F.3d at 113 (internal citations and quotation marks omitted).

Despite the more liberal standards of the NYCHRL, no reasonable juror could find in favor of plaintiff on the NYCHRL hostile work environment claim.  As noted above, Garzinti's comments to DeCaesar were even more sexually charged, and no less potentially offensive, than his comments to plaintiff or other women.   Thus, plaintiff has not shown that Garziniti's conduct was caused in any part by discriminatory or retaliatory motives.  Further, Garziniti's comments were petty slights and trivial inconveniences, not the kind of conduct that gives rise to a claim under the NYCHRL.  Plaintiff's NYCHRL claim for a hostile work environment is dismissed.

## **CONCLUSION**

Defendants' [23] motion for summary judgment is denied as to the FMLA retaliation claim but otherwise granted. By separate order, the Court will schedule a conference to set this matter down for trial on the FMLA retaliation claim.

**SO ORDERED.**

                                                                                            _____
                                                                                                                U.S.D.J.

Dated:  Brooklyn, New York
         September 5, 2019